IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:11CR3031 |
| | ) | |
| v. | ) | |
| | ) | |
| TERRY L. SCHWARCK, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendant. | ) | |

Terry L. Schwarck (Schwarck) filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. (Filing no. 129.) After initial review[1], I deny the motion and dismiss it with prejudice.[2]

---

[1]Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts provides:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

[2]The motion is timely but barely so. His direct appeal was denied on June 28, 2013 and he deposited his motion in the prison mail on September 24, 2014. Where, as here, there is an unsuccessful appeal, but no petition for certiorari is filed, the statute of limitations for § 2255 motions begins to run 90 days after the Court of Appeals judgment is entered. *Clay v. United States*, 537 U.S. 522, 532 (2003) ("[F]or federal criminal defendants who do not file a petition for certiorari . . . on direct review, § 2255's one-year statute of limitations period starts to run when the time for seeking such review expires."); Sup. Ct. R. 13.1 (stating that a petition for certiorari must be filed within 90 days after the judgment (and not the mandate) is entered). *See*

## BACKGROUND

A jury convicted Schwarck of conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 846. I sentenced him to 240 months in prison.

Several days before trial began, the government filed an information regarding a prior federal felony drug conviction under the provisions of 21 U.S.C. §§ 841(b)(1)(A)(viii) & 851(a). This meant that if Schwarck was convicted he would serve at least 20 years in prison. Notwithstanding Schwarck's knowledge of this statutory minimum sentence, he elected to proceed to trial.

The evidence against Schwarck was strong even though his defense was that he was an addict, with a party house, and not a drug dealer. An undercover cop, however, substantially undermined that claim.

Investigator Ripley testified for the prosecution about her undercover investigation. She twice purchased methamphetamine from a Christine Snyder. On the second occasion, Ripley drove Snyder to Schwarck's residence and waited outside while Snyder went inside and obtained methamphetamine. On October 5, 2010, Snyder—then working as a confidential informant—introduced Ripley to Schwarck in the basement of Schwarck's residence. Ripley gave Schwarck money for drugs in an office area at the bottom of the basement stairs, and Schwarck said that he would get methamphetamine for her from another location. During the transaction, Ripley

---

*also* United States v. Martin, 408 F.3d 1089, 1090 (8th Cir. 2005) (concluding that where Court of Appeals opinion was dated December 12, 2001, and no petition for certiorari was submitted, one-year period for filing a § 2255 motion began to run on March 12, 2002).

saw a scale sitting on the desk next to a surveillance video monitor. Ripley left Schwarck's residence and dropped off Snyder. She then equipped herself with a recording device and returned to Schwarck's residence. Schwarck gave Ripley a small plastic bag containing a quarter-ounce of methamphetamine and invited Ripley to return if she wanted to buy more drugs.

Ripley testified that she returned to Schwarck's residence six days later to attempt to purchase an eighth-ounce of methamphetamine. Ripley gave Schwarck $340 and arranged to meet him later that day outside a store to pick up the drugs. When Ripley, wearing a recording device, arrived at the meeting place and entered Schwarck's vehicle, he pulled out a radio frequency detector. The detector was flashing and beeping to indicate the possible presence of a recording device. Ripley tried to convince Schwarck that she was not wearing a recorder, but Schwarck refused to furnish the drugs unless she disrobed to show that she was unequipped. When Ripley said she was unwilling to do so, Schwarck gave her a refund, but he did not return the same bills that she had provided. Instead, he gave her bills in larger denominations, including one-hundred dollar bills.

Ripley also explained the physical layout of Schwarck's basement and the surveillance equipment she observed. On both of her visits to the residence, Ripley saw a monitor in the office area that displayed images from surveillance cameras that were located outside the residence.

The government called Sergeant William Koepke of the Lincoln/Lancaster County Drug Unit as an expert to discuss the distribution of methamphetamine in the Lincoln area and the modus operandi of drug dealers. Koepke was a twenty-year officer with ten years of experience in the narcotics unit, where he supervised other officers, interviewed more than 1,000 drug traffickers, and conducted surveillance of undercover narcotics operations. Koepke also attended training seminars and was a certified instructor on drug investigations.

In a detailed and careful explanation, Koepke outlined his experience with the many drug dealers and addicts with whom he had experience. Among many other things, Koepke testified that he had never encountered a mere user of methamphetamine who employed residential security cameras and a radio frequency detector. Koepke recounted that drug dealers commonly carry large amounts of currency that represent the proceeds of their sales. A dealer who handles larger amounts of drugs would carry one-hundred dollar bills, while dealers in smaller quantities or users typically would have five-, ten-, and twenty-dollar bills. Koepke explained that he would not expect a mere user of methamphetamine to pay for drugs using one hundred dollar bills.

Seven cooperating witness testified against Schwarck. For a detailed description of their testimony, *see* the Presentence Report. (Filing no. 102 at pp. 6-7.) Suffice it to state that these witnesses established that Schwarck was a drug dealer who had engaged in the charged conspiracy.

The jury returned a verdict against the defendant. It specifically found that he was responsible for 500 grams or more of methamphetamine. (Filing no. 91 at p. 2.)

At sentencing, the custodial range under the Guidelines was 135 to 168 months in prison. However, the statutory minimum sentence of 240 months trumped the Guidelines. Accordingly, defense counsel filed no objections or motions. Schwarck was allowed to file pro see objections to the presentence report, but those objections were overruled. Schwarck, who was 63, received the statutory minimum prison sentence of 240 months.

On appeal, Schwarck unsuccessfully challenged the admissibility of Officer Koepke's testimony. *United States v. Schwarck*, 719 F.3d 921 (8th Cir. 2013) (Police officer's expert testimony concerning the distribution of methamphetamine and the modus operandi of drug dealers was relevant and did not cause unfair prejudice that substantially outweighed its probative value, in prosecution for conspiracy to

4

distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine; testimony served to rebut the defense that defendant was merely a drug user and not a trafficker by explaining the significance of evidence that would not be familiar to average jurors, including defendant's use of a radio frequency detector, his refusal to sell drugs to an individual who set off the detector, and the practice of dealing smaller quantities of drugs to new customers, and officer's opinion that drug dealers sometimes collect "sexual favors" was elliptical and too attenuated to prejudice defendant unfairly.).

Schwarck was represented by Adam Sipple, a lawyer who has appeared before many times. Sipple is very smart and very experienced. He is also a zealous advocate. I thanked Mr. Sipple at the conclusion of these proceedings for taking the Criminal Justice Act appointment. Among other things, I stated: "I want to thank you personally. I know that you are a zealous and extremely good lawyer." (Filing no. 122 at p. 14.)

## *ANALYSIS*

Schwarck raises five arguments. None of them have merit. In fact, all of them are frivolous or border on the frivolous.

First, Schwarck claims that the government violated his due process rights by filing the § 851 information in an effort to coerce a plea. Noting that there is no requirement that the government prove that Schwarck was a "major" drug dealer before filing such an information, Schwarck has failed to provide any facts proving that the prosecutor based her decision on race, religion, or an other arbitrary classification. Moreover, because Assistant United States Attorneys are charged with taking care that the laws are faithfully executed, there is a presumption of regularity supporting their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties. As a result, I deny the first claim. *See*, *e.g.*, *United States v. Jeanpierre*, 636 F.3d 416,

424 (8th Cir. 2011) (denying claim that prosecutor abused his or her discretion by filing a section 851 information against a person who was not a "major" drug distributor).[3]

Second, Schwarck claims that the government gave the cooperating witnesses something of value in violation of the law when the entered into cooperation agreements that contemplated various actions by the government if the witnesses testified truthfully. Schwarck's claims is frivolous. *See*, *e.g.*, *United States v. Brown*, 183 F.3d 740, 742 (8th Cir. 1999) (18 U.S.C. § 201(c)(2) does not bar cooperation plea agreements).

The next three claims are ineffective assistance of counsel assertions. Regarding these claims, the *Strickland* standard must be applied. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984) (announcing principles for evaluation of claims of ineffective assistance of counsel under the Sixth Amendment). In order to prevail on a claim that defense counsel rendered ineffective assistance of counsel under *Strickland*, the claimant must establish two things. He or she must establish (1) that "'counsel's representation fell below an objective standard of reasonableness,'"[4]

---

[3]This case was concluded long before the Attorney General's "Guidance Regarding § 851 Enhancements in Plea Negotiations" dated September 24, 2014. Even if that were not the case, there is no evidence whatever tending to establish that the AUSA handling this case breached the standards set out in those Guidelines.

[4]A judge's "scrutiny of counsel's performance must be highly deferential" and the judge must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Reed v. United States*, 106 F.3d 231, 236 (8th Cir. 1997). In other words, a judge should make "every effort" to "eliminate the distorting effects of hindsight" by examining the lawyer's performance from "counsel's perspective at the time" of the alleged error. *Strickland*, 466 U.S. at 689.

and (2) that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[5] *Nguyen v. United States*, 114 F.3d 699, 703-04 (8th Cir. 1997) (quoting *Strickland*, 466 U.S. at 688, 694).

An evidentiary hearing is unnecessary if the claimant makes an insufficient preliminary showing on either or both prongs or the record clearly contradicts the claimant's showing on either or both prongs. *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995) (affirming denial of § 2255 motion without a hearing in the face of an ineffective-assistance-of-counsel claim; stating that no evidentiary hearing is required where "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact").

In third claim, Schwarck claims that Sipple was ineffective in failing to object to the drug quantity determination at sentencing. This is frivolous. The jury found beyond a reasonable doubt that Schwarck was responsible for 500 grams or more of the relevant drug. There was no basis for an objection to drug quantity at sentencing, particularly since Schwarck received the statutory minimum sentence.

In the fourth claim, Schwarck asserts that Sipple failed to interview the cooperating witnesses. Assuming only for the sake of argument that such an assertion is true, it is obvious from the transcript of trial that Sipple was fully prepared to cross

---

[5] A "reasonable probability" is less than "more likely than not," *Kyles v. Whitley*, 514 U.S. 419, 434 (1995), but it is more than a possibility. *White v. Roper*, 416 F.3d 728, 732 (8th Cir. 2005). It must be compelling enough to "undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

examine these witness by virtue of the government's provision of discovery information. Moreover, there is not the slightest showing that had Sipple done something different that the result would have been different.

In the fifth claim, Schwarck argues that Sipple was ineffective at sentencing when he failed to point out the defendant's health problems. Schwarck's assertion is untrue. Sipple did in fact point out the defendant's health problems as did the defendant personally at Sipple's urging, with the result that (1) I recommended to the Bureau of Prisons that the defendant be seen at a Federal Medical Center and (2) I ordered the probation officer to contact the classification authorities at the Bureau of Prisons to insure that they were aware of these health concerns. (Filing no. 122 at pp. 8-10.)

IT IS ORDERED that:

1. The Motion to Vacate under 28 U.S.C. § 2255 (filing no. 129) is denied and dismissed with prejudice. The Motion for Copy of the Trial Transcript (filing no. 130) is denied.

2. No certificate of appealability will be issued.

3. A separate judgment will be issued.

DATED this 27th day of October, 2014.

BY THE COURT:
*Richard G. Kopf*
Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.